## MICHAEL'S BAY LUMBER CO.
### v.
### JOHN JENKS.

20 369
49 307

1. SERVICES RENDERED—RECOVERY UNDER INDEBITATUS COUNT.— With respect to debts for work and labor or other personal services, and for materials used in performing the work, it is the rule that if preceded by the defendant's request, then, however special the agreement was, yet if it were not under seal, and the terms of it have been performed on the plaintiff's part, and the remuneration was to be in money, it is not necessary to declare specially, and the common *indebitatus* count is sufficient.

2. SAME.—Under an *indebitatus* count in assumpsit or debt the plaintiff may recover, although there be no evidence of a fixed price.

APPEAL from the Superior Court of Cook county; the Hon. MASON B. LOOMIS, Judge, presiding. Opinion filed December 8, 1886.

Mr. MASON B. LOOMIS, for appellant.

Mr. WM. H. CONDON, for appellee.

BAILEY, J. This was a suit in assumpsit, brought by John Jenks against the Michael's Bay Lumber Company, to recover for certain services alleged to have been rendered by the plaintiff to the defendant in the sale of posts and telegraph poles at Chicago. The declaration contains two special counts, alleging services under an express contract of agency. The first count alleges that on the 24th day of June, 1885, the plaintiff, at the request of the defendant, agreed to enter the employ of and work for the defendant as agent, in the sale of posts and telegraph poles at Chicago, and to make contracts for the defendant therefor, during the remainder of the year 1885, and that in consideration thereof the defendant undertook, promised and agreed to employ the plaintiff to act for the defendant as its agent at Chicago for the purposes aforesaid, from June 24, 1885, until the close of the year, and agreed to pay the plaintiff therefor one cent for each and every post sold or contracted to be sold, and three per cent. of

the profits arising from the sale or contracts made for the sale of telegraph poles by the plaintiff for the defendant; that the plaintiff accepted said terms, and in pursuance of said employment, on June 24, 1885, entered into the service of the defendant, and while in said service, contracted and sold for the defendant 28,000 posts and 27,000 telegraph poles, the profit arising from the sale of said poles being forty cents each.

The second count sets out the contract in the same terms as the first, except that it alleges that the term of service was to continue from June 24, 1885, during the residue of that year and during the year 1886, and also alleges the same amount of sales of posts and telegraph poles, and the same profits from the sales of the poles; but the count further alleges that the defendant agreed with the plaintiff to furnish and supply all the posts and poles which the plaintiff should sell or contract to sell, and that although the plaintiff did sell or contract to sell large quantities of posts and poles, and would have sold and contracted to sell a much larger number than he did, at prices fixed by the defendant, yet the defendant, violating its aforesaid agreement with the plaintiff, on the 22d day of October, 1885, without reasonable or justifiable cause, wrongfully discharged the plaintiff, whereby the plaintiff was unjustly deprived of divers gains, profits, etc.

In addition to said special counts, the plaintiff filed a *quantum valebant* count for goods, wares and merchandise sold and delivered, and the common *indebitatus assumpsit* counts for goods, wares and merchandise sold and delivered; for money lent and advanced, and paid, laid out and expended; for money had and received; for interest for the forbearance of money; for money due upon an account stated; and also "for the price and value of work done, and materials for the same provided by said plaintiff for said defendant at the like special request of said defendant."

The plaintiff gave evidence tending to show a contract between him and the defendant, by which he was to serve as the defendant's agent in the sale of posts, ties and telegraph poles, and that by said contract he was to receive one cent for every post and tie sold, and three per cent. of the profits of

all telegraph poles sold, but his evidence shows that in making said contract, nothing was said as to how long he was to remain in the defendant's employ, no time being fixed. It thus appears that there was a clear variance between the terms of the contract proved and the contract alleged in the special counts. The contract alleged was for a fixed and definite term of service, while the contract proved was for no fixed period. It is clear that by reason of said variance, no recovery can be sustained under the special counts.

The trial before the court and jury resulted in a verdict and judgment for $575.57. We see no reason why the recovery may not be sustained under the common counts. If no term of service was stipulated for, the contract was terminable at any time at the pleasure of either party, and when so terminated by the defendant, it was fully performed so far as the plaintiff was concerned, and nothing remained to be done but to pay him for the services he had performed. The case made by the evidence, then, was not one of partial performance, and where the agent has been wrongfully discharged and so prevented from full performance. Whether a recovery in such case could be had under the common counts, need not be considered here. The question is, whether services rendered upon a contract which has been fully performed can be recovered for under the *indebitatus assumpsit* counts.

It is a familiar rule of pleading, that when the terms of a special contract have been so far performed that nothing remains but a mere debt or duty to pay money, then the amount due may be recovered under a general count. 1 Chitty on Plead., 350, note f, and authorities cited. Says Mr. Chitty: "With respect to debts for work and labor or other personal services, and for materials used in performing the work, it is the rule that if preceded by the defendant's request, then, however special the agreement was, yet if it were not under seal, and the terms of it have been performed on the plaintiff's part and the remuneration was to be in money, it is not necessary to declare specially, and the common *indebitatus* count is sufficient." Ibid. 359.

It is claimed that the contract so far as it relates to the

telegraph poles, was not fully performed, because the plaintiff was to receive, according to his version of the contract, three per cent. of the profits of the posts *sold*, while the services performed consisted of making a contract on behalf of the defendant for the sale of posts. It is true that the plaintiff in one place states that he was to have three per cent. of the profits of all posts he could sell, but the entire evidence renders it apparent that the procuring orders or contracts for posts were sales within the meaning of the parties. But even if that were otherwise, the plaintiff, in making such orders, performed services for which he is entitled to compensation. and recovery can be had therefor under the *indebitatus* count. The defendant insists that in order to such recovery there should have been a *quantum meruit* count. The rule, we think, is otherwise. The learned author already quoted, in discussing the office and necessity of *quantum meruit* counts says: "Although Sir William Blackstone mentions the *quantum meruit* and *valebant* as useful, and as then to have been supposed, necessary variations to avoid the risk of the plaintiff's not being able to prove an agreement to pay a fixed price, the opinion of the profession has long been that such *quantum meruit* and *quantum valebant* counts are wholly unnecessary, and that under an *indebitatus* count in assumpsit or debt, the plaintiff may recover, although there be no evidence of a fixed price." Ibid. 352.

The evidence of the employment of the plaintiff by the defendant to perform the services in question, and as to the performance of said services, is conflicting, but we find no such preponderance of the evidence in favor of the defendant as should take the case out of the general rule that where the evidence is conflicting, the verdict of the jury should be held to be conclusive. We find no material error in the instructions to the jury, or in the rulings of the court at the trial. The judgment will be affirmed.

Judgment affirmed.